**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| ABULIZI AISHAN,<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN et al.,<br><br>Respondents. | Case No. 5:26-cv-04523-DFM<br><br>ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS WITHOUT PREJUDICE |

## I. INTRODUCTION

Petitioner Abulizi Aishan is a native and citizen of the People's Republic of China who is detained at the Adelanto ICE Processing Center pending removal proceedings. On August 11, 2026, Petitioner filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 challenging the constitutional adequacy of the custody redetermination hearing conducted by an immigration judge ("IJ") under 8 U.S.C. § 1226(a) on July 30, 2026. See Dkt. 1 ("Petition"). Respondents filed an Answer on August 18, 2026, see Dkt. 7 ("Answer"), and Petitioner filed a Traverse on August 21, 2026, see Dkt. 9 ("Traverse").

For the reasons set forth below, the Petition is **DISMISSED** without prejudice for failure to exhaust available administrative remedies. The Court does not reach the merits of Petitioner's constitutional claims.

## II. BACKGROUND

### A. Detention and Removal Proceedings

Petitioner was inspected and admitted to the United States at Los Angeles International Airport on November 15, 2022, as a B-2 nonimmigrant visitor, with authorization to remain until May 14, 2023. See Answer, Ex. C ("NTA") at 1; Petition, Ex. I ("Form I-213") at 3. On March 6, 2023, U.S. Citizenship and Immigration Services ("USCIS") received Petitioner's Form I-485 application to adjust status as the immediate relative of a United States citizen, his wife's Form I-130 petition filed on his behalf, and his Forms I-765 and I-131. See Petition ¶ 23 & Ex. B. The applications were not adjudicated, and in March 2026 Petitioner and his wife filed a civil action in this District seeking to compel adjudication. See id. ¶ 25 & Ex. C (Aishan v. Edlow, Case No. 2:26-cv-02880-HDV-MAA (C.D. Cal. filed Mar. 18, 2026)).

On July 14, 2026, Petitioner appeared for an adjustment interview and was arrested by immigration officers at the conclusion of the interview. See id. ¶ 27; Form I-213 at 2-3. He has been detained at the Adelanto ICE Processing Center since that date. See Petition ¶¶ 11, 27; Answer at 2. The following day, USCIS administratively closed the Form I-485 on the ground that the Immigration Court has jurisdiction over the application while removal proceedings are pending, and issued a request for evidence on the Form I-130. See Petition ¶¶ 28-29 & Exs. E, F.

On July 17, 2026, the Department of Homeland Security (the "Department") issued a Notice to Appear, superseding an earlier notice, charging Petitioner as removable under section 237(a)(1)(B) of the Immigration and Nationality Act for remaining in the United States beyond May 14, 2023. See NTA at 1. The Notice to Appear charges no other ground of removability. See id. The record reflects no order of removal, and

Respondents do not contend that one has been entered. See Petition ¶ 9; Traverse at 11; Answer at 2.

**B. The Custody Redetermination Hearing**

On July 30, 2026, an IJ conducted a custody redetermination hearing. Petitioner appeared through counsel who waived translator services on his behalf. See Petition, Ex. G ("Hearing Transcript") at 2-3.[1] The IJ stated that Petitioner bore the burden to establish that he is neither a danger nor a flight risk and admitted three exhibits without objection: Petitioner's bond request, a Department submission containing the Form I-213, and Petitioner's supplemental filing containing Tabs 1 through 6. See id. at 3.

Petitioner's counsel argued that Petitioner is neither a danger nor a flight risk, citing his United States citizen spouse and child, his role as caregiver, his eligibility for adjustment of status, the absence of any criminal history, his lawful entry and timely filing, and his disclosure of his prior employment. See id. at 4. As to the Form I-213's reference to the Joint Terrorism Task Force, counsel stated that no corroborating evidence had been offered and that Petitioner denied any involvement in terrorism or criminal activity. See id. Counsel for the Department stated that he did not have an argument on danger, acknowledged that Petitioner has no criminal history and that it did not appear he had violated the immigration laws, and stated that he had no information he could submit to clarify the circumstances of the arrest or the agency that performed it. See id. at 5. The Department argued that Petitioner appeared to have held an intent to immigrate when he entered on a B-2 visa after his marriage, and that he lacked deep ties in the United States. See id.

[1] The Hearing Transcript was prepared by Petitioner's counsel's legal assistant by listening to the audio recording. See Hearing Transcript at 3. Respondents do not object to the Hearing Transcript and have not lodged one of their own.

Petitioner's counsel responded that Petitioner originally intended to return to China but remained because of his wife's complicated pregnancy and the premature birth of their son. See id.

Ruling orally, the IJ found the evidence insufficient to establish that Petitioner is a danger to the community, citing Matter of Urena, 25 I. & N. Dec. 140 (BIA 2009). See id. at 6. Turning to flight risk, the IJ referred to the non-exhaustive custody factors of Matter of Guerra, 24 I. & N. Dec. 37 (BIA 2006). See id. He stated that, while Petitioner may not have held an intent to immigrate when he obtained his visa, it appeared on the record that he held such intent at the time of his admission, "which carries a certain indicia . . . of misrepresentation," and "that he misrepresented such intent to the immigration officials upon inspection." Id. He found that Petitioner had been in the United States for a relatively short period, which "weighs against his release," citing Matter of Akhmedov, 29 I. & N. Dec. 166 (BIA 2025). Id. He stated that, although the Department had no additional evidence to present, the Form I-213 showed that Petitioner "was subject of . . . what appears to be an alert . . . pertinent to National Security, which is within the realm of Joint Terrorist Task Force," and that this was "a factor for the court to consider"; that "despite the alert, the court has no evidence to show what the basis for that alert is"; and that Petitioner had produced "no evidence to counteract the existence of that alert." Id. He observed that Petitioner has a United States citizen spouse and a three-year-old son, stated that "there are clear issues pertaining to the likelihood to abscond," and denied bond on the ground that Petitioner is a flight risk. Id. at 6-7. He added that issues "pertaining to possible fraud at the time of inspection" and "any national security considerations" could be developed later in the removal proceedings. See id. at 7.

The written order denies the request for a change in custody status because of "Flight risk which no amount of bond, even if coupled with

alternatives to detention, is sufficient to mitigate significant likelihood of absconding." Petition, Ex. H ("Bond Order") at 1; Answer, Ex. D. The order states that the court "orally articulated its findings and reasons in support of its decision denying release from custody," citing 8 C.F.R. § 1003.19(f), and that it "memorialized its thorough articulations in support of its decision within the Court's Digital Audio Recording (DAR) system," citing 8 C.F.R. § 1003.38. See Bond Order at 1. Petitioner reserved appeal; the order states "Appeal Due: 08/31/2026." See id. at 2.

### C. This Action

The Petition pleads four claims under the Due Process Clause of the Fifth Amendment: that the IJ relied on an unsubstantiated allegation Petitioner could not rebut; that the IJ made an adverse finding of misrepresentation without notice or an opportunity to respond; that the IJ denied release without inquiring into Petitioner's financial circumstances or any alternative condition of supervision; and that these defects cumulatively rendered the hearing constitutionally inadequate under Mathews v. Eldridge, 424 U.S. 319 (1976). See Petition ¶¶ 74-114. Petitioner asks the Court to order his release or, in the alternative, to order a new custody redetermination hearing on specified terms. See id., Prayer ¶¶ c-e.

Respondents contend that 8 U.S.C. §§ 1252(a)(5) and 1252(b)(9) direct Petitioner's claims to the court of appeals; that the IJ applied the correct legal standard and that 8 U.S.C. § 1226(e) forecloses any reweighing of his determination; and that Petitioner should be required to complete the exhaustion of his administrative remedies before the Board of Immigration Appeals ("BIA"). See Answer at 2-7.

## III. DISCUSSION

A federal court may grant a writ of habeas corpus to a petitioner "in custody in violation of the Constitution or laws or treaties of the United

States." 28 U.S.C. § 2241(c)(3). Habeas jurisdiction extends to noncitizens challenging the lawfulness of their immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001).

At a custody redetermination hearing under 8 U.S.C. § 1226(a), the detainee bears the burden of demonstrating that his "release would not pose a danger to property or persons, and that [he] is likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8); see also id. § 1003.19; Rodriguez Diaz v. Garland, 53 F.4th 1189, 1210-12 (9th Cir. 2022).

## A. The Court Has Jurisdiction

Respondents contend that 8 U.S.C. §§ 1252(a)(5) and 1252(b)(9) direct Petitioner's claims to the court of appeals. See Answer at 4-5. Those provisions govern review of orders of removal, and Petitioner has none. "[T]he jurisdiction-stripping provision [of the REAL ID Act] does not apply to federal habeas corpus petitions that do not involve final orders of removal." Flores-Torres v. Mukasey, 548 F.3d 708, 711 (9th Cir. 2008) (citation omitted). The Supreme Court has likewise declined to read § 1252(b)(9) to reach detention claims, which would otherwise be effectively unreviewable. See Jennings v. Rodriguez, 583 U.S. 281, 293-94 (2018); Nielsen v. Preap, 586 U.S. 392, 402 (2019). Nor does 8 U.S.C. § 1226(e) bar review. It limits review of the Attorney General's discretionary custody judgments but "does not limit habeas jurisdiction over constitutional claims or questions of law." Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011).

## B. Petitioner Must Exhaust Administrative Remedies

Respondents' primary argument is that Petitioner should be required to exhaust administrative remedies. See Answer at 3-7.

A noncitizen must ordinarily exhaust available administrative remedies before challenging immigration detention under § 2241. "Once an alien has received a . . . bond hearing before an [IJ], he may appeal the IJ's decision to

the [BIA]. If the alien is dissatisfied with the BIA's decision, he may then file a habeas petition in the district court." Leonardo v. Crawford, 646 F.3d 1157, 1159 (9th Cir. 2011). When a petitioner does not exhaust this prudential remedy, "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." Id. at 1160.

### 1. Exhaustion Is Available

"In accordance with § 1003.38 of this chapter, the alien or the Service may appeal the decision of an immigration judge" on custody to the BIA. 8 C.F.R. § 1236.1(d)(3)(i); see id. § 1003.19(a). At the close of the hearing the IJ stated his assumption that counsel "will be reserving your client's right to appeal," counsel confirmed she would, and the written order states an appeal due date of August 31, 2026. See Hearing Transcript at 7; Bond Order at 2.

Nothing in the record shows that an appeal was taken. Respondents state that there is no indication of one, see Answer at 4 & n.1, and the Traverse, filed twenty-two (22) days after the bond order, does not assert that one has been filed, see Traverse at 12-13.[2] On this record, the Court finds that the administrative remedy has not been shown to have been exhausted.

### 2. The Puga Factors Favor Requiring Exhaustion

Exhaustion of a bond appeal is prudential rather than statutory, and a court has discretion to excuse it. See Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007) (citing Laing v. Ashcroft, 370 F.3d 994, 997 (9th Cir. 2004)). Courts may require prudential exhaustion where "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper

---

[2] See also https://acis.eoir.justice.gov/en/ (search A-Number: "232375363," Nationality: "China") (last accessed September 8, 2026) ("No appeal was received for this case.").

decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." Id. (citation omitted).

First, agency expertise and the availability of the administrative record favor requiring exhaustion. Petitioner's claims—centered around the IJ's findings—lie within the BIA's expertise. Moreover, the necessary materials are not before this Court. A written statement of the IJ's reasons would be produced by Petitioner's appeal. See EOIR Policy Manual, pt. II, ch. 8.3(e)(7) ("Usually, the Immigration Judge's decision is rendered orally. If either party appeals, the Immigration Judge prepares a written decision based on notes from the hearing.") The exhibits the IJ admitted as Exhibits 1 and 3 are also not before this Court. Petitioner's claims ask in part what the IJ did and did not consider, and the answer depends on what those exhibits contained.

Second, avoiding deliberate bypass of the administrative scheme favors requiring exhaustion. Petitioner filed this action twelve (12) days after the bond order issued and twenty (20) days before the appeal deadline. In Leonardo, the petitioner "pursued habeas review of the IJ's adverse bond determination before appealing to the BIA," and the court held that "[t]his short cut was improper." 646 F.3d at 1160.

Third, requiring exhaustion gives the agency an opportunity to make any necessary correction. The BIA reviews an IJ's findings of fact for clear error and reviews "questions of law, discretion, and judgment and all other issues in appeals from decisions of immigration judges de novo." 8 C.F.R. § 1003.1(d)(3)(i), (ii). Where further factfinding is required, the BIA "may remand the proceeding to the immigration judge." Id. § 1003.1(d)(3)(iv). Petitioner's alleged errors are the sort the BIA is able to review: whether a Form I-213 notation may be given weight on flight risk; whether the IJ

required Petitioner to disprove an allegation the judge acknowledged he could not evaluate; and whether the IJ's reference to misrepresentation went beyond what the Department raised. These are the "procedural errors, constitutional or otherwise, that are correctable by the administrative tribunal," not errors that "lie outside the BIA's ken." Liu v. Waters, 55 F.3d 421, 426 (9th Cir. 1995) ("[T]he BIA does have the authority to reopen cases to fix administratively correctable procedural errors, even when these errors are failures to follow due process."); see also Rashtabadi v. INS, 23 F.3d 1562, 1567 (9th Cir. 1994) (petitioner's allegations of "due process violations," i.e., IJ's failure to advise him of his rights and attorney's failure to obtain consent to admitting deportability, were "exactly the sorts of procedural errors which require exhaustion").

**3. Petitioner Has Not Shown Grounds for Excusing Exhaustion**

Exhaustion may be excused where "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." Laing, 370 F.3d at 1000 (citation omitted). Petitioner argues inadequacy and irreparable injury, and separately contends that his petition raises a substantial constitutional question. See Petition ¶¶ 63-68; Traverse at 11, 13-14.

Petitioner argues the remedy is inadequate because the IJ issued no written decision and because "a body applying the same standards" cannot supply constitutional review. Petition ¶ 67. However, the agency's procedures generate the record that review requires: an appeal prompts the immigration judge to prepare a written decision, EOIR Policy Manual, pt. II, ch. 8.3(e)(7), and sends the record of proceeding to the BIA, 8 C.F.R. § 1003.5(a). Whether the BIA's review will prove adequate is not something the Court can answer in advance.

Petitioner alleges that exhaustion would cause irreparable injury because he would remain detained while not receiving a Repatha injection, treatment for obstructive sleep apnea, increased prescription dosage following a recorded blood pressure above a certain threshold, and no accommodations for his religious diet. See Petition ¶¶ 61, 66. But Laing recognizes irreparable injury from pursuit of the administrative remedy. See 370 F.3d at 1000. The injury Petitioner describes is a product of the conditions of his confinement rather than the requirement that he present his custody challenge to the BIA before presenting it here. The Court acknowledges Petitioner's allegation that a custody appeal "is decided on the ordinary docket over a period of months." Petition ¶ 66. But it is the cost of the administrative scheme itself, present in every unexhausted custody challenge; treating it as irreparable injury would excuse exhaustion in all of them.

Finally, Petitioner alleges that he raises "substantial constitutional questions" that should be exempt. See id. ¶¶ 64, 68; Traverse at 11, 13-14. However, a claim is not exempt from exhaustion because it is labeled constitutional; the question is whether the asserted error is "correctable by the administrative tribunal" or lies "outside the BIA's ken." Liu, 55 F.3d at 426. For the reasons given above, each of the claims he pleads describes an error the BIA can correct.

**4. Dismissal Rather Than a Stay**

Petitioner asks for a stay, urging that dismissal "would leave Petitioner detained under a determination Respondents have not defended, with no forum to test it on the timeline his medical circumstances require." Traverse at 15. The Court concludes that dismissal without prejudice is the better course of action. Petitioner sought no BIA review before filing here and filed twelve (12) days after an order that set an appeal deadline at the end of the month; a stay would hold this case open for an administrative proceeding that has not begun.

Furthermore, the record that merits review would require will be assembled in the administrative appeal rather than here.

### C. Remaining Requests for Relief

Because the action is dismissed for failure to exhaust, the Court does not reach Petitioner's request for release or for a new custody redetermination hearing. See Petition, Prayer ¶¶ c-e. Petitioner's request to enjoin his transfer outside this District, return of personal property, and fees under the Equal Access to Justice Act are denied without prejudice. The Court does not reach Petitioner's constitutional claims, his allegations concerning medical care and religious diet, or the question whether respondents other than his immediate custodian are proper parties. The dismissal is without prejudice to a new petition under 28 U.S.C. § 2241 raising the claims pleaded here once Petitioner has exhausted his administrative remedies.

## IV. ORDER

The Petition and this action are **DISMISSED** without prejudice for failure to exhaust available administrative remedies. The Court does not reach the merits of the claims pleaded in the Petition. Petitioner's requests to enjoin his transfer, for the return of his personal property, and for fees under the Equal Access to Justice Act are **DENIED** without prejudice.

Date: September 9, 2026

DOUGLAS F. McCORMICK
United States Magistrate Judge